IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| GIORGI GVEDASHVILI,<br><br>  *Petitioner,*<br><br>v.<br><br>DEVERY MOONEYHAM, in his official capacity as Warden of the Limestone County Detention Center, BRET A. BRADFORD, in his official capacity as Field Office Director of the ICE Houston Field Office of Enforcement and Removal Operations, TODD M. LYONS, in his official capacity as Acting Director, Immigration and Customs Enforcement, KRISTI NOEM, in her official capacity as Secretary, U.S. Department of Homeland Security, and PAMELA JO BONDI, in her official capacity as Attorney General of the United States,<br><br>  *Respondents,* | § § § § § § § § § § § § § § § § § § § § § § § | CASE NO. 6:25-CV-00552-ADA-DTG |

## ORDER TO RELEASE PETITIONER

Pending before the Court is Petitioner's, Giorgi Gvedashvili's, petition for a writ of habeas corpus (Dkt. No. 1). The petition is fully briefed, and on December 9, 2025, Magistrate Judge Gilliland heard arguments from the parties. The Court has reviewed those proceedings. After careful consideration of the briefs, arguments, and the applicable law, the petition is hereby **GRANTED**.

### I.  BACKGROUND

The relevant facts are undisputed. The petitioner, Giorgi Gvedashvili, is a Georgian citizen who entered the United States in 2022. Dkt. No. 1 at 11. On June 26, 2022, one day after entering the country, he was apprehended by U.S. Border Patrol agents in San Luis, Arizona. *Id.* at 1; Dkt.

No. 3 at 3. Border Patrol agents placed him in full removal proceedings, issued him a Notice to Appear, and released him on his own recognizance. Dkt. No. 1-2 at 2–8. After his release, he filed an I-589 application for asylum, which is currently pending before the immigration court. Dkt. No. 1 at 2.

On November 12, 2025, the petitioner appeared for an in-person check-in, as required by his release conditions. *Id.* At the check-in, he was arrested by officers for Immigration and Customs Enforcement ("ICE") and transferred to the Limestone County Detention Center in Groesbeck, Texas, where he is currently being held. *Id.*

Historically, an alien that is already in the country at the time of his arrest would be eligible for a bond hearing before an immigration court under 8 U.S.C. § 1226(a). *See Becerra Vargas v. Bondi*, SA-25-CV-01023-FB-HJB, 2025 WL 3300446, at *4 (W.D. Tex. Nov. 12, 2025), *report and recommendation adopted*, No. SA-25-CV-1023-FB, 2025 WL 3300141 (W.D. Tex. Nov. 26, 2025). The petitioner, however, claims that he has been detained pursuant to the government's new immigration policy of holding all aliens classified as "applicants for admission" without bond. *See* Dkt. No. 1 at 2–3. As a result, the petitioner claims requesting a bond would be futile and instead petitions the Court for a writ of habeas corpus. *Id.* at 5.

The petitioner argues that his continued detention without a bond hearing violates 8 U.S.C. § 1226, applicable bond regulations, 8 U.S.C. § 1225, and his right to due process under the Fifth Amendment. *Id.* at 11–13. He asks the Court to declare his custody unlawful and grant his immediate release or, alternatively, order a bond hearing before the immigration court. *Id.* at 14.

## II.     ANALYSIS

The petitioner claims that ICE unlawfully detained him without a bond hearing under 8 U.S.C. § 1225(b)(2)(A). *Id.* at 5. But the respondents claim that he has been mandatorily detained

pursuant to 8 U.S.C. § 1225(b)(1), not (b)(2). Dkt. No. 3 at 3. Because the petitioner is an "applicant for admission" who was apprehended by U.S. Border Patrol within two (2) years of his entry, the respondents argue that he must remain in detention during his removal proceedings pursuant to § 1225(b)(1). *Id.* at 8.

As the respondents insist that they did not detain the petitioner under § 1225(b)(2), the Court does not reach whether his detention would be unlawful under that provision. Instead, the Court first considers whether the petitioner's detention is unlawful under § 1225(b)(1).

### A. Jurisdiction

As always, the Court must first consider its own jurisdiction. *E.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (rejecting the practice of assuming jurisdiction and holding that determining jurisdiction is a fundamental threshold issue). Generally, federal district courts have the authority to issue writs of habeas corpus for those incarcerated within the district in which it sits. 28 U.S.C. § 2241(a); *Lee v. Wetzel*, 244 F.3d 370, 373 (5th Cir. 2001) (stating that the "district of incarceration" has jurisdiction over § 2241 petitions). As the petitioner is incarcerated within the Western District of Texas, § 2241(a) grants this Court jurisdiction over his petition. The respondents argue that the jurisdiction-stripping provisions found in 8 U.S.C. §§ 1252(g) and 1225(b)(4) bar judicial review. Dkt. No. 3 at 10–11.

#### 1. 8 U.S.C. § 1252(g) Does Not Deprive the Court of Jurisdiction

The respondents contend that 8 U.S.C. § 1252(g) deprives the Court of jurisdiction over this petition. Section § 1252(g) strips district courts of jurisdiction over cases "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The respondents broadly construe this to

deprive federal courts of jurisdiction over "any part of the process by which [the petitioner's] removability will be determined." Dkt. No. 3 at 10.

This Court does not agree with that interpretation. Section 1252(g) only prevents judicial review of the "three specific actions" outlined in its text. *Jennings v. Rodriguez,* 583 U.S. 281, 294 (2018) (rejecting a broad reading of § 1252(g) and limiting it "to just those three specific actions"); *Lopez-Arevelo v. Ripa*, Case No. EP-25-CV-337-KC, 2025 WL 2691828, at *4 (W.D. Tex. Sept. 22, 2025). The petitioner challenges his detention without a bond hearing, and as held by other courts of this district, § 1252(g) does not deprive this Court of jurisdiction. *Lopez-Arevelo v. Ripa*, 2025 WL 2691828, at *4–5.

### 2. Section 1225(b)(4) Does Not Deprive the Court of Jurisdiction

The respondents also claim that 8 U.S.C. § 1225(b)(4) deprives the Court of jurisdiction. The respondents contend that the statute requires the petitioner to challenge his classification as an applicant for admission in his ongoing removal proceedings before it is subject to judicial review. Dkt. No. 3 at 11. They argue that this interpretation of § 1225(b)(4) is consistent with the channeling provisions found in 8 U.S.C. § 1252(b)(9), which provides that challenges to removal proceedings must be reviewed by the court of appeals upon a final order of removal. *Id.* (citing *SQDC v. Bondi*, No. 25–3348 (PAM/DLM), 2025 WL2617973 (D. Minn. Sept. 9, 2025)).

This argument fails on the plain language of the statute. Section 1225(b)(4) provides that any decision of an examining immigration officer that is "favorable to the admission of any alien" may be challenged by another immigration officer before the immigration court. While the case cited by respondents—*SQDC v. Bondi*, No. 25–3348 (PAM/DLM), 2025 WL2617973 (D. Minn. Sept. 9, 2025)—never referenced § 1225(b)(4), it involved an ICE appeal of a bond determination that was favorable to the alien, which is not the situation here. Section 1225(b)(4) does not apply

to challenges raised by an alien and has no bearing on this case. Accordingly, neither provision strips the Court of its jurisdiction.

### B. The Petitioner Is Not Subject to Mandatory Detention Under 8 U.S.C. § 1225(b)(1)

Section 1225(b)(1) sets screening protocols for aliens arriving in the United States and "certain other aliens who have not been admitted or paroled." If an immigration officer determines that an arriving alien is inadmissible under 8 U.S.C. §§ 1182(a)(6)(C) or (a)(7), § 1225(b)(1)(A)(i) allows the officer to place the alien in expedited removal proceedings. But if the alien indicates that he intends to apply for asylum or fears persecution in his home country, the officer must instead refer him for an asylum interview under § 1225(b)(1)(B). *See* 8 U.S.C. § 1225(b)(1)(A)(ii).

Section 1225(b)(1)(A)(iii) allows the government to screen "certain other aliens" under the procedures outlined in § 1225(b)(1), specifically:

> [A]n alien who is not described in subparagraph (F), who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

8 U.S.C. § 1225(b)(1)(A)(iii)(II).

The respondents claim that the petitioner's detention is mandatory under this subsection. Dkt. No. 3 at 3–4. At the hearing, the Court inquired how that provision mandated the petitioner's detention when it does not contemplate or even mention detention. The respondents clarified that his detention fell under § 1225(b)(1)(B)(ii), which requires that an alien be detained for asylum consideration if an immigration officer determines that he has a credible fear of persecution during an asylum interview. The Court then inquired if the petitioner had been interviewed for asylum, and, if so, whether he had been determined to have a credible fear. The respondents could not

answer this question[1] and argued, in the alternative, that the petitioner was detained under § 1225(b)(1)(B)(iii)(IV), which states that aliens "subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution . . . ."

There are many issues with the respondents' claim that they are legally required to detain the petitioner—not the least of which is the fact that the respondents cannot say which subsection of the law mandates his detention. The Court does not reach whether §§ 1225(b)(1)(B)(ii) or (iii)(IV) would mandate detention in this case. Instead, the Court finds that the petitioner is not an alien described under § 1225(b)(1)(A)(iii)(II) and, therefore, is not subject to § 1225(b)(1).

Section 1225(b)(1)(A)(iii)(II)'s plain language sets three requirements before an alien is subject to § 1225(b)(1). First, the alien must not be an alien described in subparagraph (F). Second, the alien must not have been admitted or paroled into the United States. And third, the alien failed to show to immigration officer that he has been physically present in the United States for two (2) years before his inadmissibility was determined under the subparagraph. The Court finds that the petitioner does not satisfy the third factor.

Section 1225(b)(1)(A)(iii)(II) requires that the alien be determined inadmissible "under this subparagraph." Courts generally interpret the term "under this subparagraph" to refer to the entire subdivision preceded by a capital letter. *See, e.g., Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60–61 (2004) (explaining the hierarchy set forth in congressional drafting manuals). For

---

[1] At the hearing, the petitioner indicated through his counsel that he has not been interviewed for asylum under § 1225(b)(1)(B). However, as the petitioner's counsel failed to provide a qualified interpreter, the Court does not rely on this testimony in its analysis. *See* Fed. R. Evid. 604; *see also U.S. E.E.O.C. v. Taqueria Rodeo de Jalisco*, No. 4:11-CV-03444, 2012 WL 6630159, at *7 (S.D. Tex. Dec. 19, 2012) ("To be admissible evidence, witness testimony translated from a foreign language must be properly authenticated and any interpretation must be shown to be an accurate translation done by a competent translator.").

§ 1225(b)(1)(A)(iii)(II), the inadmissibility determination must therefore be made pursuant to § 1225(b)(1)(A).

While an alien may be "inadmissible" for a myriad of reasons under the Immigration and Nationality Act, *see* 8 U.S.C. § 1182, § 1225(b)(1)(A) only applies to aliens that were deemed inadmissible under 8 U.S.C. §§ 1182(a)(6)(C) and (a)(7). *See* 8 U.S.C. §§ 1225(b)(1)(A)(i)–(ii). But the petitioner was deemed inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). Dkt. No. 1-2 at 2. Accordingly, the Court cannot find that the petitioner was deemed inadmissible "under this subparagraph."

The petitioner is therefore not an alien described by § 1225(b)(1)(A)(iii)(II), and the respondents do not claim to detain him under any other provision of law. Thus, Petitioner's Petition will be granted.

### C. Requests for Attorney's Fees Must Be Raised Separately

The petitioner also makes a summary request for attorney's costs and fees under the Equal Access to Justice Act. Dkt. No. 1 at 14. Under the Court's local rules, requests for attorney's fees must be made in a separate motion not later than fourteen (14) days following the entry of final judgment. Local Rule CV-54(b). Accordingly, the Court does not address this issue, and the petitioner may renew his request in a separate motion, as provided by the Local Rules.

### III. CONCLUSION

Petitioner has shown that his continued detention under 8 U.S.C. § 1226 is unlawful. Thus, Petioner's Petition is hereby **GRANTED**.

**IT IS THEREFORE ORDERED** that Respondents are **DIRECTED** to **RELEASE** Petitioner Giorgi Gvedashvili from custody, under appropriate conditions, to a public place by **no later than 6:00 p.m. on December 23, 2025.** Respondents must **NOTIFY** Petitioner's counsel

of the exact location and exact time of Petitioner's release as soon as practicable and **no less than two hours before the release.** If Petitioner is re-detained pursuant to 8 U.S.C. § 1226, all applicable procedures must be followed, including that Petitioner must be afforded a bond hearing.

All other relief is **DENIED AS MOOT**.

**SIGNED** this 22nd day of December, 2025.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE